JAIME B. BENÍTEZ ESQUILÍN ET ALS., apelantes, *v.* JOHNSON & JOHNSON, CPI, apelada.

*Número:* AC-2001-59          *Resuelto:* 30 de septiembre de 2002

*Luis R. Mellado González*, abogado de la parte apelante; *Juan M. Frontera Suau, Carl Shuster, Lourdes C. Hernández Venegas* y *José Dávila*, representantes de la parte apelada.

PER CURIAM:

## I

El 16 de junio de 1997, el Sr. Jaime Benítez Esquilín y otros sesenta y un empleados instaron una demanda ante el tribunal de instancia, por sí y en representación de setecientos empleados, contra la compañía Johnson & Johnson, CPI (J & J). En la demanda reclamaron el pago de: (1) penalidad por haber trabajado durante el periodo de tomar alimentos; (2) un tipo de salario adicional al tipo sencillo ya pagado por haber trabajado durante el séptimo día de la semana; (3) duplicación del diferencial pagado por haber trabajado segundos o terceros turnos una vez se excedió la

jornada semanal de cuarenta horas; (4) vacaciones no concedidas o no disfrutadas consecutivamente o fraccionadas indebidamente; (5) bonos de navidad dejados de percibir en relación con los diferenciales pagados por segundos o terceros turnos; (6) pago de tiempo dedicado a ponerse y quitarse uniformes, y (7) beneficios por planes de ahorro y retiro que alegadamente fueron ofrecidos por J & J.

Luego de varios trámites procesales, J & J presentó una moción de sentencia sumaria en la que solicitó la desestimación de la demanda en cuanto a cuarenta[1] de los demandantes. Fundamentó su solicitud en que cada uno de esos demandantes firmó un "Acuerdo de Separación y Relevo General" (Acuerdo) en el cual transaron extrajudicialmente las reclamaciones objeto de la demanda.

Cuarenta y un demandantes comparecieron en oposición a la solicitud de sentencia sumaria de J & J. Alegaron que las cláusulas de renuncia de derechos laborales contenidas en el Acuerdo eran nulas y que la alegada transacción no procedía en derecho, pues no se había cumplido con lo establecido en la Ley de Horas y Días de Trabajo, Ley Núm. 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 271 *et seq.* (Ley 379), para que la renuncia de los derechos en controversia fuese válida.

Con esta moción los demandantes acompañaron una declaración jurada. En ésta afirmaron que para fines de 1995 o principios de 1996, el gerente de la planta de J & J reunió a todos los empleados y les informó que la planta sería cerrada dentro de los próximos dos años a partir de la fecha de la reunión. Señalaron los demandantes que la gerencia les explicó que los empleados que optaran por que-

---

[1] Cabe señalar que en los documentos que obran en el expediente varía el número de demandantes contra el cual se solicitó la desestimación. La moción de sentencia sumaria presentada por J & J hace referencia a cuarenta demandantes, y las sentencias del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones hacen referencia a cuarenta y siete demandantes, así como también el recurso presentado ante nos por los empleados demandantes. Por otra parte, en la oposición a la moción de sentencia sumaria comparecieron un total de cuarenta y un demandantes.

darse en la planta hasta el cierre recibirían el pago de separación o mesada correspondiente a dos semanas por cada año de servicio hasta un máximo de veinte años, pero los que renunciaran o se transfirieran a otra planta de J & J no recibirían ningún beneficio. Los demandantes también declararon que no se les habló de relevo alguno como condición para recibir los referidos beneficios sino hasta mediados de agosto o principios de septiembre de 1997, cuando ya los empleados en cuestión habían presentado la demanda que nos ocupa.

Según la declaración jurada suscrita por los empleados demandantes, cuando se acercaba la fecha de su cesantía, se les refirió a una reunión con un abogado del Departamento del Trabajo y Recursos Humanos (Departamento del Trabajo). En estas reuniones se les explicó que si querían recibir los beneficios prometidos por J & J debían firmar el Acuerdo. Por su parte, el abogado a cargo del caso ante el tribunal de instancia les asesoró en el sentido de que las cláusulas contenidas en el Acuerdo relacionadas a la renuncia de derechos salariales objeto de la demanda presentada por éstos eran nulas y contrarias a la ley, y bajo dicha creencia firmaron, ya que por su necesidad económica al quedar desempleados les urgía recibir el pago prometido por J & J.

J & J replicó a la oposición de los demandantes. La compañía alegó que éstos habían sido debidamente orientados en cuanto a las cláusulas y condiciones del Acuerdo por los abogados del Departamento del Trabajo. Señaló, además, que el Acuerdo específicamente incluía la renuncia a los derechos laborales bajo cualquier decreto mandatorio, la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico (Ley de Salario Mínimo) y la Ley 379, y expresamente indicaba que la renuncia incluía las reclamaciones relacionadas a la demanda presentada por los empleados ante el tribunal de instancia. A esta moción acompañaron la declaración jurada de quien era la gerente

de recursos humanos de J & J. Ésta declaró, esencial-
mente, que ningún empleado le expresó interrogantes
acerca del Acuerdo aunque el asunto fue ampliamente di-
fundido entre los empleados desde enero de 1997, fecha en
la cual se comenzaron a firmar los relevos.

El tribunal de instancia dictó una resolución en la cual
denegó la solicitud de sentencia sumaria presentada por J
& J. Concluyó que el Acuerdo extrajudicial firmado entre
los empleados y la J & J era nulo, pues los derechos inclui-
dos en dicho acuerdo eran irrenunciables según la Ley 379,
aun cuando los empleados hubiesen sido orientados al res-
pecto por el Departamento del Trabajo al firmar.

Inconforme, J & J recurrió de esta determinación ante
el Tribunal de Circuito de Apelaciones (Tribunal de
Circuito). Dicho foro revocó el dictamen recurrido. Con-
cluyó que el Acuerdo firmado por los demandantes consti-
tuía una transacción extrajudicial válida, pues la Ley 379
permite la renuncia de los derechos en controversia siem-
pre que ésta se verifique por algún funcionario del Depar-
tamento del Trabajo, lo cual ocurrió en este caso. En con-
secuencia, desestimó la demanda contra la J & J en cuanto
a los cuarenta y siete empleados que firmaron el Acuerdo.

Los empleados afectados recurrieron de esta determina-
ción ante nos mediante un recurso de apelación. Mediante
Resolución de 25 de enero de 2002, acordamos revisar y
expedimos el recurso, acogiéndolo como *certiorari* por ser el
apropiado. Ambas partes han presentado sus alegatos y,
con el beneficio de sus argumentos, resolvemos.

II

El Art. 13 de la Ley 379, *supra*, dispone, en lo
pertinente, lo siguiente:

> Todo empleado que reciba una compensación menor que la
> fijada en [este título] para horas regulares y horas extras de
> trabajo o para el período señalado para tomar los alimentos

tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquidación de daños y perjuicios ....

.    .    .    .    .    .    .    .

Será nula toda transacción extrajudicial sobre el pago del salario correspondiente a las horas regulares, a las horas extras de trabajo, al período señalado para tomar los alimentos o sobre el pago de la suma igual a la reclamada que fija este capítulo por concepto de liquidación de daños y perjuicios[.] *Disponiéndose, sin embargo, que será válida a los propósitos de esta ley toda transacción que se verifique ante el Secretario del Trabajo y Recursos Humanos o ante cualesquiera de los abogados o funcionarios del Departamento del Trabajo y Recursos Humanos, designados por dicho Secretario.* (Énfasis suplido.) 29 L.P.R.A. sec. 282.

Como vemos, la citada Ley 379 permite que los empleados transijan sus reclamaciones de salarios bajo dicha legislación, siempre y cuando se cumpla con el requisito de verificación de la transacción por parte de un funcionario autorizado del Departamento del Trabajo. Dichas transacciones de derechos salariales no son nulas si se hacen en la forma y manera que dispone la ley.

■ Por otra parte, la Ley 379 le concede facultad al Secretario del Trabajo para determinar administrativamente cuáles transacciones judiciales o extrajudiciales requerirán su intervención personal, fijando los criterios que regirán a estos efectos mediante reglamento u orden administrativa. A estos efectos, se aprobó un reglamento para establecer las normas a seguir en la aprobación de transacciones de las reclamaciones instadas al amparo de la Ley 96 de 16 de junio de 1956 y la Ley 379, y designar abogados que pueden intervenir en éstas. Reglamento Núm. 3060 de 7 de diciembre de 1983 (Reglamento).

Este Reglamento dispone los requisitos para aprobar las transacciones entre los empleados y el patrono bajo la Ley 379, tanto de reclamaciones judiciales como de reclamaciones a nivel administrativo. En el caso de marras, nos ocu-

pan las disposiciones del Reglamento relativas a la transacción de una reclamación judicial de salarios bajo la Ley 379, la cual está regulada por los Arts. 5 y 6 del referido Reglamento.

El Art. 5 específicamente dispone que los abogados del Departamento del Trabajo podrán aprobar transacciones de reclamaciones judiciales de salarios bajo la Ley 379 sin la intervención del Secretario del Trabajo y Recursos Humanos (Secretario del Trabajo) *en todo caso en que se reclame judicialmente una suma no mayor de diez mil dólares, incluyendo la penalidad de ley.* En los casos en que la reclamación exceda esta cantidad, el Art. 6 establece que es necesario que la transacción de dicha reclamación sea verificada y aprobada por el Secretario del Trabajo.

El Art. 7(a) del Reglamento, a su vez, dispone que el abogado o funcionario del Departamento del Trabajo que intervenga en la transacción de un caso, *redactará un informe haciendo una relación sucinta de los hechos, señalará la suma básica y la suma total reclamada, la suma por la cual se transige la reclamación y los fundamentos de hecho o derecho que justifican la transacción.* En casos en que la suma que se reclame judicialmente exceda los diez mil dólares, el Reglamento exige que el referido informe sea remitido al Secretario del Trabajo para su aprobación.

Al analizar el caso de autos, nos percatamos que del expediente no surge que el Acuerdo en cuestión haya cumplido con los requisitos del Reglamento para que éste pueda considerarse una transacción válida de la reclamación judicial de salarios de los demandantes. En primer lugar, el Acuerdo es un documento que preparó J & J para todos los empleados que cesaban en la compañía. Con respecto a los empleados demandantes, no consta en los acuerdos firmados a cuánto ascendía la suma reclamada por éstos en el trámite judicial, ni tampoco la suma por la

cual cada uno de ellos "transigió" su reclamación.([2]) Tampoco surge del expediente que algún abogado o funcionario del Departamento del Trabajo haya preparado el informe que requiere el Reglamento para que el trámite de transacción se completara satisfactoriamente. Ni siquiera consta en los documentos que obran en el expediente si la suma reclamada por los cuarenta y siete demandantes cuya acción judicial se alega fue transada excedía o no la cantidad de diez mil dólares, por lo que no era posible determinar si se requería la aprobación del Secretario del Trabajo para validar los acuerdos de transacción objeto de esta controversia.([3])

Así, pues, estimamos que de las alegaciones, declaraciones juradas y demás documentos que obran en el expediente no es posible determinar si el Acuerdo entre la J & J y los cuarenta y siete empleados cuya demanda fue desestimada por el Tribunal de Circuito cumplió o no con los requisitos de ley y reglamento para que se considerase válido y vinculante entre las partes. No procedía, pues, dictar sentencia sumaria para decretar la nulidad de los acuerdos, como tampoco procedía dictar sentencia sumaria para sostener la validez de éstos y desestimar la demanda en cuanto a los cuarenta y siete empleados que firmaron los referidos acuerdos.

Recuérdese una vez más que la sentencia sumaria es un remedio extraordinario que sólo debe concederse cuando el promovente ha establecido su derecho con claridad y ha demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de las alegaciones y de los documentos que obren en el

---

([2]) Cabe señalar que en los documentos que obran en el expediente se encuentra copia de los cheques emitidos a favor de los empleados en virtud de la firma del Acuerdo. Las cantidades pagadas a éstos fluctuaron entre los siete mil dólares a veintidós mil dólares.

([3]) En la demanda original, la cual se instó a nombre de alrededor de setecientos empleados de Johnson & Johnson, CPI, se indica que la suma reclamada asciende a veintitrés millones de dólares.

expediente. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1987). Procede dictar sentencia sumaria solamente cuando no existe una disputa legítima de hecho a ser dirimida, y sólo resta aplicar el derecho. *Pardo v. Sucn. Stella*, 145 D.P.R. 816 (1998).

## III

Por todos los fundamentos antes expuestos, *se revoca la sentencia dictada por el Tribunal de Circuito mediante la cual se desestimó la demanda presentada contra J & J en cuanto a los cuarenta y siete demandantes que firmaron el Acuerdo, se reinstala el dictamen del tribunal de instancia que declaró sin lugar la moción de sentencia sumaria de J & J, y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.*