EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Aida I. Martínez Figueroa<br>    Recurrida<br>              v.<br><br>Oficina del Gobernador etc.<br>     Peticionario | Certiorari<br><br>2000 TSPR 173 |
| --- | --- |

Número del Caso: CC-1999-0863

Fecha: 29/noviembre/2000

Tribunal de Circuito de Apelaciones:

                         Circuito Regional I

Juez Ponente:

                         Hon. Dolores Rodríguez de Oronoz

Oficina del Procurador General:

                         Lcda. Karen Pagán Pagán

Abogado de la Parte Recurrida:

                         Lcdo. Carmelo Guzmán Geigel

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Aida I. Martínez Figueroa

     Demandante- recurrida

          v.                        CC-1999-863    CERTIORARI

Oficina del Gobernador (Propia),
etc.

     Demandado- recurrente

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico a 29 de noviembre de 2000

**El 1 de marzo de 1992, Aida Martínez Figueroa fue nombrada al puesto de Funcionario(a) Ejecutivo(a) V en el servicio de carrera, adscrita a la Oficina del Gobernador del Estado Libre Asociado de Puerto Rico. Posteriormente, el 24 de junio de 1994, el señor Henry F. González, Ayudante Especial del Gobernador a cargo de Administración, envió una carta a Martínez Figueroa, informando que se proponía separarla del servicio. Esto, debido a que, su reclutamiento y nombramiento al puesto de Funcionario(a) Ejecutivo(a) V había sido ilegal, por ésta no cumplir con los requisitos mínimos para el mencionado puesto y por que su nombramiento no cumplió con el procedimiento establecido en el**

Reglamento de Personal de la Oficina del Gobernador. Además, el señor González citó a Martínez Figueroa a una vista informal en la Oficina de Recursos Humanos, para que presentara evidencia que sostuviera una determinación en contrario.

Celebrada la vista, el 14 de agosto de 1994, el Oficial Examinador Cándido A. Salva Rodríguez emitió un informe recomendando la separación de Martínez Figueroa.[1] El señor González acogió la recomendación del Oficial Examinador y, el 15 de agosto de 1994, notificó a Martínez Figueroa que, efectivo el 30 de agosto del mismo año, quedaba separada definitivamente del servicio.

Inconforme, el 29 de agosto de 1994, Martínez Figueroa presentó la correspondiente apelación, solicitando vista ante un Oficial Examinador Independiente. En dicha vista las partes tuvieron oportunidad de presentar prueba testifical y documental. Posteriormente, el 10 de julio de 1994, el Examinador Héctor Quijano Borges emitió una resolución, mediante la cual declaró nulo el nombramiento de Martínez Figueroa por haberse incumplido con el Reglamento de Personal de la Oficina del Gobernador y con el principio de mérito.

Oportunamente, Martínez Figueroa acudió ante el Tribunal de Circuito de Apelaciones. El 30 de agosto de 1999, el foro intermedio apelativo emitió sentencia <u>revocando</u> la determinación del Oficial Examinador Independiente. En síntesis, el foro apelativo intermedio resolvió que: la Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1301 *et seq*, en específico el principio de mérito, no es aplicable a la Oficina del Gobernador; que las normas contenidas en el "Reglamento para la Administración del Personal" (Reglamento) de la Oficina del Gobernador Propia aplicables al procedimiento de reclutamiento ordinario fueron cumplidas; y, que Martínez Figueroa cumplía con los requisitos mínimos de experiencia y preparación para ocupar

---

[1] Según éste, al evaluar "los aspectos relacionados con la naturaleza, aspectos distintivos, dificultad y ejemplos típicos de la clase de Funcionario Ejecutivo IV en comparación con las funciones realizadas en los puestos de Mecanógrafa Administrativa II y Secretaria Ejecutiva I, surge que los de Funcionario Ejecutivo IV son superiores, respecto a su naturaleza complejidad". Por tal razón, determinó, que la experiencia previa de

el puesto de Funcionario(a) Ejecutivo(a) V. En consecuencia, ordenó la reinstalación de Martínez Figueroa al referido puesto, así como el pago de los salarios adeudados a ésta.

Como resultado de la determinación del foro intermedio apelativo, acudió ante este Tribunal, vía *certiorari*, la Oficina del Gobernador, por conducto de la Oficina del Procurador General, alegando que erró el Tribunal de Circuito de Apelaciones:

"A.    ...AL SUSTITUIR EL CRITERIO DEL ORGANISMO ADMINISTRATIVO POR EL SUYO, INTERVINIENDO EN LAS DETERMINACIONES DE HECHO LAS CUALES ESTABAN APOYADAS POR PRUEBA SUSTANCIAL EN EL EXPEDIENTE.

B.    ...AL DETERMINAR QUE NO LE ES APLICABLE EL PRINCIPIO DE MERITO A LA OFICINA DEL GOBERNADOR.

C.    ...AL NO TOMAR EN CUENTA E IGNORAR SIN FUNDAMENTO PARA ELLO HECHOS MATERIALES IMPORTANTES."

El 23 de diciembre de 1999, decidimos expedir el recurso. Por estar íntimamente relacionados entre si, discutiremos los señalamientos de error en conjunto.[2]

I

Al acometer nuestra función de interpretación de las leyes, reiteramos algunas normas de hermenéutica pertinentes.

"[E]s principio cardinal de hermenéutica que '[a]l interpretar una disposición específica de una ley los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener...' Nuestra obligación fundamental en estos casos, es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley.... Al interpretar y aplicar un estatuto hay que hacerlo teniendo

_____

Martínez Figueroa no era convalidable para cualificarla a un puesto de Funcionario(a) Ejecutivo(a) V.

[2] El señalamiento de error A está basado en la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2175, la cual dispone que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo". Sin embargo, la Sección 1.3 de la L.P.A.U. excluye expresamente a la Oficina del Gobernador Propia de la definición del término "agencia" para los efectos de dicha ley. Dada la conclusión a la que llegamos, resulta innecesario discutir si los preceptos contenidos en la L.P.A.U. aplican a los procedimientos de revisión judicial de las determinaciones de la Oficina del Gobernador Propia.

presente el propósito social que lo inspiró...." (Citas omitidas.) <u>Vázquez</u> v. <u>A.R.P.E.</u>, 128 D.P.R. 513, 523 (1991).

"Una vez descubierto el deseo y voluntad del legislador, el fin de la interpretación ha sido logrado y no resulta necesario aplicar ninguna regla de hermenéutica, porque éstas no son sino una ayuda para determinar esa voluntad legislativa que se busca.... Sólo hay una regla de interpretación que es absolutamente invariable y ésta es que debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo." Véase: R.E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e Intepretación de las Leyes en Puerto Rico</u>, San Juan, Publicaciones J.T.S., Inc., 2 da ed., 1987, págs. 241-242. En esta búsqueda acudimos prioritariamente al texto de la ley, pues cuando éste es claro y libre de ambigüedad, no debe ser menospreciado bajo el pretexto de cumplir su espíritu. Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14. Otra fuente a consultar para descubrir la intención del legislador es el historial legislativo del estatuto en cuestión. <u>Caballero</u> v. <u>Sistemas de Retiro</u>, 129 D.P.R.__(1991).

A la luz de estas normas de hermenéutica, pasamos a considerar si aplica el <u>principio de méritos</u> a la Oficina del Gobernador Propia. Como es sabido, La Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 *et seq*., establece que el principio del mérito rige el sector de empleo público en Puerto Rico. 3 L.P.R.A. sec. 1311. Originalmente, la referida Ley excluía de su aplicación a las siguientes instrumentalidades del Gobierno: la Rama Legislativa; la Rama Judicial; los empleados de agencias o instrumentalidades del Gobierno que funcionen como empresas o negocios privados; y, los empleados de agencias o instrumentalidades del Gobierno que tengan derecho a negociar colectivamente mediante leyes especiales. En cuanto a la administración de personal de la Rama Judicial y la Rama Legislativa, la Ley dispuso que se regirán por las disposiciones de las leyes vigentes aplicables a dichas ramas. Sin embargo, en cuanto a la administración de los demás organismos excluidos, la Ley dispuso que éstos debían adoptar un reglamento de personal, en el cual <u>tenían que incorporar el principio de mérito</u>. Posteriormente,

mediante la Ley Núm. 49 del 7 de junio de 1977, se añadió a la lista de organismos excluidos de la aplicación de la Ley de Personal de Servicio Publico a la Universidad de Puerto Rico; igualmente se dispuso que ésta tenía que adoptar un reglamento de personal que incorpore el principio de mérito.

El 31 de julio de 1989, la Legislatura aprobó la Ley 38; medida legislativa mediante la cual expresamente se excluyó de la aplicación de la Ley de Personal de Servicio Público a la Oficina del Gobernador Propia. Según expresamente dispone dicha Ley, la Oficina del Gobernador Propia tenía que adoptar un reglamento de personal dentro de los siguientes 120 días a la vigencia de dicha ley. A diferencia de las leyes mencionadas anteriormente, sin embargo, la Ley 38, del 31 de julio de 1989, no dispuso expresamente que dicho reglamento debía incorporar el principio de mérito.

Como vemos, todo parece indicar que la intención legislativa no era obligar a la Oficina del Gobernador Propia a que adoptara un reglamento de personal que incorporara el  principio de mérito. Así lo expresó el Senador Tirado Delgado, Presidente de la Comisión de Trabajo Y Asuntos de Veterano Y Recursos Humanos, en el debate del Senado del P. del S. 420 (anteproyecto de la Ley 38, ante), cuando a preguntas de la Senadora Muñoz Mendoza aclaró que la mencionada Ley dejaba a la discreción de la Oficina del Gobernador Propia la aplicación de los principios fundamentales del sistema de mérito.[3]

En cumplimiento con la Ley 38, ante, el 6 de junio de 1990, la Oficina del Gobernador Propia aprobó un "Reglamento para la Administración del Personal" (Reglamento), mediante el cual estableció, entre otras cosas, el procedimiento para seleccionar y reclutar empleados. El Reglamento establece que la Oficina del Gobernador Propia deberá adoptar normas de reclutamiento, mediante las cuales establezca las cualidades idóneas para los diferentes empleos. Sección 8.1, Reglamento. Además, dispone que, para propiciar el reclutamiento de candidatos idóneos, "se podrán divulgar las

---

[3] "SRA. MUÑOZ MENDOZA: ¿Aplicarán las áreas esenciales al principio de mérito, al reglamento y a las transacciones de personal de la Oficina del Gobernador Propia?
SR: TIRADO DELGADO: Eso se dejaría a la discreción de las personas que establezcan la reglamentación." P. del S., Diario de Sesiones, 21 de junio de 1989, pág. 1922.

oportunidades de empleo por medios de comunicación apropiados". Sección 8.2,

Reglamento.

En cuanto al procedimiento para reclutar, y en lo pertinente al recurso

de autos, el Artículo 8 del referido Reglamento dispone lo siguiente:

"Sección 8.3 –      Registro de Elegibles

Se establecerán los registros de elegibles conforme a las siguientes disposiciones:
1.- Los nombres de los solicitantes se colocaran en orden descendente conforme al resultado de las evaluaciones sometidas con la solicitud de empleo.
2.- El orden se establecerá tomando en consideración, entre otros, los siguientes factores:
   a.         Preparación académica general o especial.
   b.         Experiencia relacionada con el puesto.
   c.         Estudios  académicos o especiales.
   d.         Fecha de la radicación de solicitud.
3.-  La elegibilidad de las personas que figuran en los registros se eliminara por cualquiera de las siguientes causas:
                  .      .      .      .
   c.         No someter evidencia requerida sobre cualidades idóneas, o someter evidencia indicativa de que no tiene las cualidades idóneas para cumplir con las funciones asignadas al puesto.

Sección 8.4-Certificación y Selección

Los puestos vacantes en el servicio de carrera se cubrirán mediante la selección de los candidatos que figuren en los registros elegibles, conforme a lo siguiente:
   1.         El director de la unidad de trabajo someterá una requisición de empleados.
   2.         Se expedirán certificaciones para cubrir las vacantes en el orden de recibo de las solicitudes. Los elegibles incluidos en cada certificación deberán ser los primero diez (10) que aparezcan el registro.
                  .      .      .      .
Sección 8.5 –      Verificación de Requisitos, Examen Médico y Juramento de Fidelidad

   1.      Se verificará que los candidatos seleccionados reúnan los requisitos considerados idóneos para desempeñar con eficiencia las funciones correspondientes a los puestos en los cuales serán nombrados y demás condiciones de ingreso al servicio público.
   2.      Se podrá cancelar la selección de un candidato si no presenta evidencia requerida o no tiene las condiciones idóneas según la evidencia presentada.

Sección 8.7-Nombramientos Transitorios
                  .      .      .      .
   c.      Ninguna persona que haya recibido nombramiento transitorio podrá ser nombrada para desempeñar puestos en el servicio de carrera con estatus (sic) probatorio o regular a menor que haya pasado por el proceso de reclutamiento y selección que establece este reglamento."

Finalmente, la Sección 8.8 del Reglamento establece un procedimiento especial de reclutamiento y selección que ha de utilizarse "cuando no se disponga de registros de elegibles apropiados para determinadas clases de puestos y la urgencia del servicio a prestarse lo justifique..." Sin embargo, aun cuando se utilice el procedimiento especial de reclutamiento, la persona debe reunir las <u>cualidades idóneas</u> del puesto correspondiente.

Ciertamente, era discrecional de la Oficina del Gobernador, al adoptar su reglamento, incorporar o no el principio de mérito. Ahora bien, y aun cuando no se dice expresamente, un examen minucioso del mismo, en específico, del proceso de reclutamiento y selección de empleados, <u>nos lleva a la forzosa conclusión de que el mismo efectivamente incorpora el principio de mérito</u>. Como podemos notar, las transcritas disposiciones reglamentarias siguen el modelo del principio del mérito, conforme el mismo fuera plasmado en la Ley de Personal del Servicio Público.[4]

## II

El principio de mérito se fundamenta en que todos los empleados públicos deben seleccionarse, ascenderse, adiestrarse y retenerse en sus empleos con exclusiva atención a sus méritos individuales, sin distinciones por condición de raza, color, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas. <u>La clave es la idoneidad del aspirante al servicio público</u>. Así, el proceso de selección de candidatos resulta ser uno de los aspectos más cruciales en el funcionamiento de este tipo de sistema. <u>Díaz de Llovet</u> v. <u>Oficina del Gobernador</u>, 112 D.P.R. 747 (1982). Esto, debido a que existe un interés apremiante del Estado en asegurar que todas las personas que emplee tengan las cualificaciones mínimas para desempeñarse en sus tareas. <u>Rubín Ramírez</u> v. <u>Trías Monge</u>, 111 D.P.R. 481.

Debe mantenerse presente, además, que el sistema de mérito es uno integral que cubre tanto el despido del empleado como su ingreso, por lo que si el empleado ingresó al servicio público sin tener que cumplir con

---

[4]  3 L.P.R.A. Sec. 1331 y ss.

los requisitos del Sistema de Mérito no puede luego reclamar la protección del Sistema en el despido, salvo cuando éste sea por discrimen político. <u>Ramos</u> v. <u>Srio. de Comercio</u>, 112 D.P.R. 514 (1982).

Partiendo de estos principios es que debemos analizar si el proceso de selección de Martínez Figueroa cumplió con el Reglamento de la Oficina del Gobernador.

### III

Según surge del expediente de la Oficina del Gobernador, el 15 de enero de 1992, se publicó la Convocatoria Número 15 para cubrir cuatro puestos de Funcionario(a) Ejecutivo(a) V.[5] Se desprende de la referida convocatoria que, los requisitos mínimos para la posición de Funcionario(a) Ejecutivo(a) V eran los siguientes:

> Graduación de cuarto año de colegio o universidad reconocida y tres (3) años de experiencia en puestos de responsabilidad progresiva en organizaciones comerciales o en el servicio publico, la experiencia deberá ser de naturaleza oficinesca, administrativa, ejecutiva o de supervisión, uno de estos de naturaleza y complejidad similar a las de un <u>Funcionario(a) Ejecutivo(a) IV</u> de la Oficina del Gobernador Propia o de un organismo gubernamental o privado. <u>Una combinación equivalente de preparación y experiencia es aceptable, que no sea menor de graduación de escuela superior en lo académico</u>.

Como resultado de la convocatoria, el 5 de febrero de 1992, Martínez Figueroa presentó su solicitud de examen para el puesto de Funcionario(a) Ejecutivo(a) V. Del mismo surge que Martínez Figueroa finalizó estudios de escuela superior, curso estudios por dos años (2) en Ramírez Comercial, graduándose en el 1971, y se desempeñó como: Mecanógrafa Administrativa III, en la Universidad de Puerto Rico, por aproximadamente seis (6) años

---

[5] Surge del expediente administrativo que dicha convocatoria se publicó en el tablón de edictos de la Oficina del Gobernador, además, se envió a los siguientes organismos gubernamentales: Departamento de Estado, Cuerpo de Bomberos de Puerto Rico, A.R.P.E., Departamento de Hacienda, ADT, Departamento de Servicios Sociales, Oficina para el Desarrollo Humano, Administración de Instituciones Juveniles, Departamento de Recursos Humanos, Autoridad de Comunicaciones de Puerto Rico, Autoridad de Edificios Públicos, Oficina del Procurador del Veterano, Administración de Servicios Agrícolas, Compañía de Fomento Recreativo, Departamento de Comercio, Departamento de Justicia, Autoridad de Puertos, Administración de Servicios Generales Y el Departamento de Recreación y Deportes.

(1972-1978); y Secretaria Ejecutiva I, en la Oficina del Gobernador, por aproximadamente cuatro (4) años (1988-1992).

Según el Plan de Clasificación de la Oficina del Gobernador Propia, el puesto de Funcionario(a) Ejecutivo(a) IV es de "naturaleza administrativa que envuelve la dirección, coordinación y supervisión de una unidad de trabajo..." Entre los ejemplos típicos del trabajo se encuentran: coordinar y supervisar actividades; coordinar y supervisar tareas; preparar plan de trabajo de la unidad; mantener récords estadísticos; evaluar y desarrollar normas, reglamentos y procedimientos relacionados con el área de trabajo. Por otro lado, el puesto de Secretaria Ejecutiva I consiste en trabajo secretarial y administrativo, que a pesar de que incluye llevar a cabo tareas complejas y variadas, el nivel de complejidad es mucho menor al de un Funcionario(a) Ejecutivo(a) IV.

Según los requisitos mínimos contenidos en la convocatoria 15-1992 para el puesto de Funcionario(a) Ejecutivo(a) V, en los casos en que el solicitante no se haya graduado de cuarto año de colegio o universidad, como es el caso de Martínez Figueroa, el candidato debe cumplir con una combinación equivalente de preparación y experiencia mínima de siete (7) años.

En el caso de autos, no hay duda de que Martínez Figueroa tenía suficiente experiencia en puestos de naturaleza oficinesca. El Tribunal de Circuito de Apelaciones, sin embargo, <u>erró</u> al obviar requisito de que uno de los puestos previos de Martínez Figueroa tenía que ser de índole o naturaleza similar, en cuanto a naturaleza y complejidad, a las de un Funcionario(a) Ejecutivo(a) IV. Este requisito forma parte de la idoneidad del aspirante para desempeñarse en el puesto de Funcionario(a) Ejecutivo(a) V; su incumplimiento la descalifica.

Evaluada la experiencia previa de Martínez Figueroa, resulta forzoso concluir que ésta <u>no</u> tenía las cualidades idóneas para ocupar el puesto de Funcionario(a) Ejecutivo(a) V. Su nombramiento a dicho puesto, en consecuencia, fue en claro incumplimiento con el reglamento y con los principios fundamentales del sistema de mérito. Siendo el nombramiento de

Martínez Figueroa uno inválido, el mismo no obliga al organismo, ni impide su corrección. (citas omitidas) <u>Del Rey</u> v. <u>J.A.C.L.</u>, 107 D.P.R. 348 (1978).

Por las razones antes expresadas, procede <u>revocar</u> la sentencia dictada por el Tribunal de Circuito de Apelaciones, pues no procedía la reinstalación de Martínez Figueroa al puesto de Funcionario(a) Ejecutivo(a) por incumplir ésta con las cualidades idóneas para dicho puesto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Aida I. Martínez Figueroa

    Demandante– recurrida

        v.                          CC-1999-863    CERTIORARI

Oficina del Gobernador (Propia),
etc.

    Demandado– recurrente


SENTENCIA


San Juan, Puerto Rico a 29 de noviembre de 2000


**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones, resultando improcedente la reinstalación de Aida Martínez Figueroa al puesto de Funcionario(a) Ejecutivo(a) por incumplir ésta con las cualidades idóneas para dicho puesto.**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Asociado señor Rivera Pérez inhibido.**


                           **Isabel Llompart Zeno**
                        **Secretaria del Tribunal Supremo**